The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Good morning. Welcome to the Fourth Circuit. We're ready to hear argument in our first case, United States v. Jones. Ms. Ray. Excuse me. Good morning, Your Honors. May it please the Court, Amy Ray for the United States. Your Honors, the District Court erred when the Court applied the safety valve to Ms. Jones because the best reading of that provision to avoid surplusage and to avoid a result that simply doesn't make sense is to interpret does not have to apply to all three of the recidivist possibilities. So does not have more than four criminal history points, does not have a prior three-point offense, and does not have a prior two-point violent offense. So and does not mean and in the statute here. Your Honor, we certainly think that and does mean and, but it means and in a distributive reading. So does not have, and does not have, and does not have. That's just a fancy way of saying and means or. It certainly could have been written as or. And so the question is, I would say this, we have two plausible readings of this statute. Both are plausible, that's why we're here. What then is plausible about the rest of it? So if we have the language. Counsel, I'm sorry, can I just ask if we have two plausible readings of this statute, is there room for the rule of lenity here? Only, Your Honor, if there's grievous ambiguity. And we would suggest that there is not. And I would note that none of the five circuits who have decided this issue have actually applied the rule of lenity. Although there are several judges who have said, two courts who have said, if I thought it were close, then I would go with the rule of lenity. That's true. That's true. But nobody, after looking at everything, the language, the context, the purpose, none of the courts have, the majorities of any court, have reached the rule of lenity and relied on it. But if we conclude that and means and, and Congress meant what it said, there isn't any ambiguity. Your Honor, there is ambiguity in the sense that I think that there are two ways we can read this. We agree that and means and. Well, if we conclude that and means and, and we look at the rest of this particular statute, where Congress appears to know how to use or when it wants and and when it wants, that makes it more difficult, I would think, to say that we should pick one subsection of the statute and read the term and differently than we would read it in all the other subsections. Well, the other, so I, I understand that, Your Honor. I would say that there is Judge Oldham in Palomares in her concurrence offered a, an alternative way of reading it with and that I think is also consistent and not ambiguous. So what... We've got colleagues across the country who've given us any number of ways to look at this. Right. It's true. It's true. And I'm, I'm in the same position that Your Honors are in terms of just wrestling with this statute and trying to figure out what is clear and what is not clear. What I do know is that the rule against surplusage is a powerful canon. I also know that the safety valve, the purpose of the safety valve is to enable nonviolent low-level offenders to, to benefit from it. It is not to enable... So can I ask about, so the, I get that point. And one of the arguments I suppose you have is, is that reading it the way Jones would have it read would lead to absurd results, right? That's one of your, one of your points among many. But is it really absurd when ultimately it's up to the district court judge to decide whether or not to apply the, the safety valve in the end? That's sort of the, sort of the safety valve to the safety valve because ultimately if a district court agrees with you that in a particular context it just doesn't make sense to apply it notwithstanding the, what some judges have considered to be the literal interpretation of the statute, that's, you know, that's where, that's where those things can be hashed out. That's right, your honor. But I would say this in response to that, to that observation. That while it ultimately is up to the district court's discretion, the mandatory minimums are powerful. And it simply does not make sense for a defendant in this very odd category of having... Well, they are powerful, but it's clear that Congress intended to allow district courts to deviate when appropriate. That's right, that's right. So, but why, why don't we just trust our district court colleagues to get it right? It's not a question of getting it right or wrong. I mean, we have to say what is the best interpretation of this statute. Yes, it's ultimately a discretionary call, but it's a discretionary call when, that allows everyone to take advantage of it except this very odd group of folks who have a two-point violent offense, a three-point offense, and four. So unless somebody has all three, and that's completely, it just makes absolutely no sense. Well, there's a lot of things Congress does that some of us might think don't make a whole lot of sense. Fair enough, Judge Agee, but when there is a reasonable construction that yields a sensible result, and one that accords with the purpose of the statute, and so what I was talking about with respect to the Judge Oldham's interpretation, which I actually thought was interesting, and not simply because it yielded the results I wanted to, although admittedly that was a happy circumstance. But, you know, what it showed, what Judge Oldham talked about was if you look at the structure of the statute, it actually begins with the district court must find with an M-dash, right, M-dash, and then you have the subsection one, which is the only subsection that deals with recidivism, and it says does not have M-dash. When you talk about the first part where it says the district court must find M-dash, this court and all others have construed that to mean that all of the five provisions that follow must be satisfied for a defendant to receive the safety valve. So by construing that what follows the M-dash with an and to mean that, you know, that basically you have to have all of this or you don't get it, and in this case it's does not have, then does not have applies to all three. So in the first case the court must find applies. It seems like an awfully convoluted way for Congress to have written a statute which, if it intended to say what you have proffered to us is the meaning, it simply could have used or and you wouldn't have that problem. Sure. Or to have written it a defendant shall not be eligible if they do any of the following three. It just seems very odd even for Congress to have written a statute like this. I think that when you have a court must find and then you have the M-dash and every single thing the court must find applies to all of those five things. The court must find that the recidivist, the court must find that they're not a supervisor or manager, that it applies to all of that, then why wouldn't does not have that precedes an M-dash also apply to the following three? I agree with your Honor. There are simpler ways to say it. But without that construction we take subsection, subparagraph A completely out. Well, a bunch of judges, right, in courts have come up with plausible work that A might be doing, even on the disjunctive reading. And I guess one of my questions is, you know, whether at the end of the day you would hold that those theories are correct or not. I mean, isn't the fact that there are plausible accounts of the work that A might be doing, isn't that sufficient? Your Honor, I think if those accounts were faithful to the language, maybe, but if they're not, because they basically read out according to the sentencing guidelines. If you read the safety valve provision F-1, and it says with respect to each of these, a one-point offense as determined under the sentencing guidelines. Oh, is this about the Lopez Court's theory about what C means? Well, no, no, it's actually about Judge Pryor's decision in Garcon and what he says, which is essentially that when you use... ...directly into the guidelines language and gives two examples of how the two-point offense and then the three-point offense come up with points, but they're not criminal history points because of the passage of time. Right, so... Is he wrong? He is wrong, because what...he's not wrong about the way that 4B1...I mean, that 2A1.2 applies. Obviously, he's certainly right about that. But what I would say that Judge Pryor gets wrong there is that the... ...when Congress...what he basically says is Congress came up with new language when it talked about two-point offense and three-point offense. That's unique to this statute. But it's...that makes less sense than the notion that Congress was giving a shorthand way of saying, what's a two-point offense? We know it's 4A1.2...sorry. In 4A1.1 is the...no, I'm getting that wrong, aren't I? In...yeah, I got it right. 4A1.1 defines what a two-point offense is, what a three-point offense is, and what a one-point offense is. And you stop there, because that's the language of the safety valve. And you don't go to 4A1.2 in terms of how you apply what points get actually counted. That's a counting provision. That's not a definitional. That's counting. Can I ask you a question? And I'm struggling with exactly how to frame this about this surplusage thing. It just seems to me that we have a case where the text is really clear. And so the surplusage maybe would have to be incredibly obvious to kind of counterbalance that. And I just feel like, first of all, even from a kind of a standing start, it's not particularly obvious. Like I could imagine Congress just passing this statute and not sort of catching the addition problem that you're presenting. And then on top of that, we have at least plausible accounts for how there might be a difference between the points under A and the offenses under B and C. And when you add that all together, I'm just sort of struggling to see how in this particular case the canon could override the text. If the text were as clear as Your Honor suggests, then the canon wouldn't override the text. But the text isn't that clear. So you're starting from the proposition that the text is kind of like hopelessly ambiguous, so let's go with the canon. That's right. Okay. And the canon as well as what is the best way of achieving the purpose of the safety valve. And it probably was not to allow a judge to have discretion when someone had three three-point violent offenses. Counsel, there are going to be anomalies either way, right? You know, when Congress passes a general statute, there will be cases that don't seem like they're what Congress had in mind. And I'm thinking of the graffiti defendant in Lopez. You know, not a violent offender, one graffiti offense. Congress probably, I mean, as far as we can tell, Congress probably thought it would be fine if he could at least have a chance at being sentenced under the mandatory minimum. And I just, I guess I'm sort of circling back to where Judge Diaz was. If you use the conjunctive construction, the district court judge's discretion takes care of the anomalies. If we adopt a disjunctive construction, we're stuck with the anomalies. There's no way out. Except that, Your Honor, I don't think that Congress would have intended, what is the purpose of this provision if it yields only a very tiny category of defendants who don't get it? Well, that's a policy argument, isn't it? I mean, that's, I mean, it seems like you're back to your absurdity argument. Yes. Absurdity is a pretty high level to reach. As Judge Harris indicated, there are some plausible readings. But even the Supreme Court has said, you know, that if the text is clear, we were to conclude that, then if there's surplusage, then it's up to Congress to fix it. Your Honor, this court in Sims has said that this court cannot reach an interpretation that yields surplusage. Well, the Supreme Court says that you can't. I don't know of any case where the Supreme Court has found that surplusage is okay when it's a significant part of the statute, not just sort of one little, you know. That either places someone, that would prohibit someone from being able to take advantage of the safety valve, depending on whether you have to show, the government would have to simply show one with the defendant's burden. But whether one disqualifies or whether it's all three. Back to Judge Harris' earlier question about the rule of lenity. You know, this case has a lot of interesting parts, including math, apparently, which is always a perilous endeavor for judges. And I haven't counted up the number of judges who are on either side of this argument, but is it the very fact that we have so many judges disagreeing with each other about what this statute means, by definition suggests that this is in fact a grievous ambiguity, in which case we fall back to the rule of lenity. No, Your Honor. At the end of the day, what the Supreme Court has said is that the rule of lenity applies essentially when you just have to guess. And no judge that has looked at this in terms of no court, the majority has looked at this and found that there was no way to answer this question. They've disagreed about the answer. But, I mean, again, I think I'm remembering right. That is true only because at least the Eleventh Circuit and the Ninth Circuit ultimately found that the meaning was clear in the defendant's favor. But both of those courts were very clear that if there were any question about that, then at best, this was grievously ambiguous. At best, from the government's perspective, this is grievously ambiguous and they would apply the rule of lenity. Your Honor, I say that my time is up. May I? Please. So it's true, but part of my point is that everyone has ultimately decided one way or the other that the statute was sufficiently clear not to apply the rule of lenity. And I think that what that says, Judge Harris, is how grievously ambiguous it has to be. And our interpretation, we would submit, is a very plausible interpretation of the language. And it accords best with the statutory canon against surplusage and, most importantly, with the purpose of the statute. Their interpretation, the defendant's interpretation, does not achieve that purpose. Thank you, Your Honors. All right. You've got some rebuttal time, Ms. Ray. Mr. Carpenter, maybe you can make this very clear. May it please the Court. The government is asking this Court to engage in grammatical gymnastics to achieve a statutory meaning that Congress could have achieved, as you've noted, by simply replacing the word and with the word or. We are asking this Court to reject that interpretation and affirm the sentence below. So would you simply say the statute and means and, and that's the end of the discussion? Yes. I mean, I think that, as Judge Pryor does in the Garcon case, of course, the Court should go forward and address the government's counterarguments. Right? So I do think it's worth addressing surplusage and worth addressing absurdity. But I think at the end of the day, I would make the point that Judge Newsom makes in his concurrence in that case, which is that no amount of canons can convert and into or. So the plain language, and means and, that answers the question. You can address, you know, you can explain the surplusage, address them in the opinion, but I don't think they can be used to inject ambiguity into a statute that is otherwise clear. And I think I want to just highlight the key point, and I think you've touched on it, that I think undermines the government's argument. And that is there are three, three very simple, very clear ways in which Congress could have written the statute to achieve the meaning that the government wants. First, as we've talked about, it could have used the word or as it did in all of these other provisions of the safety valve. Second is it could have used a word like any of the following before the MDASH as it did in other provisions of the First Step Act. And the third thing it could have done is it could have repeated the verb phrase does not have in each subsection as it did in F4, where it repeated the verb phrase was not before the two criteria in that provision. Each of those constructions were available to Congress. They used them in related provisions, and it's implausible to think that with those constructions available that Congress intended instead to use an MDASH, hoping that the reader would know that that MDASH distributes the prefatory clause into each of the subsections. It's implausible to think Congress would have done that because there's no Supreme Court case that says an MDASH works that way. There's no treatise on statutory interpretation, no dictionary, no style guide, no drafting manual, no authority of any kind that suggests MDASH has worked that way. The other thing I would point out about the MDASH that I do think is important is the canon of consistent usage works against it, as Judge Willett explained in his dissent in the Fifth Circuit. I know my friend relied to some extent on the presence of the MDASH in the beginning of 3553F, which leads into the five separate criteria, but that MDASH under their reading isn't distributive. It doesn't work the same way as the one in F1, because if the MDASH distributed the prefatory clause, so the prefatory clause in F says the district court has authority to go below the mandatory minimum if it finds X plus Y plus Z, 1, 2, 3, 4, 5. If instead, this has a distributive reading, instead of one grant of authority based on these five criteria, there would be five separate grants of authority saying the district court has authority if it finds the lack of criminal history points. And the district court separately would have authority if it finds F2 and separately would have authority if it would find F3. In other words, and Judge Willett explains this better than I am doing in his dissent, it would convert a one grant of authority with five criteria into five separate grants of authority where a defendant would only have to satisfy one of these five things to be safety valve eligible. It's yet another reason not to follow the government's interpretation. I'm happy to talk about the surpluses or absurdity arguments if the court wants to. At the same time, I also recognize you have other business to get to. Can I just ask you about, Ms. Ray at one point mentioned that the reason why this, in her view, in the government's view, this just doesn't make any sense is that it really just cabins exclusion of the safety valve to a very narrow set of people with a, for lack of a better term, particular set of skills in terms of their ability to accumulate criminal history points and the like. I mean, it just doesn't seem intuitive to think that Congress intended that result. How do you respond to that? So first and foremost, what I would rely on is the Lopez case that we cited in the briefing. If the statute is ultimately interpreted the way that Lopez interprets it, it's not actually a particularly odd combination of criminal history that would disqualify someone. And the reason for that is, the reason the government has this argument that it's a peculiar combination is that the two-point violent offense would, in their view, exclude a serious violent offense, which, as the Lopez court explains, doesn't make a whole lot of sense, that Congress would have set out subsection C to target only minor or medium, I would say, violent offenses while not caring about more serious ones. So I think under the Lopez reading, the combination isn't actually all that unusual. But that said, even if it were an unusual combination, the point I would make is the one that Judge Pryor made in his opinion, which is that Congress legislates broadly and there's always going to be marginal cases as long as we can say that it could be rational for them to do it, that's good enough. In other words, absurdity is a very high bar, especially a high bar to overcome plain language. And on that point, I think I would reiterate what Judge Willett says in his dissent in the Fifth Circuit, which is that the absurdity doctrine really has no place in a criminal case where it should be trumped by the rule of lenity. And he cites the Wiltberger case from the Supreme Court for that proposition, where the language was plain, seemed kind of nonsensical, and yet the Supreme Court said, this is a criminal case, we can't construe the language against the defendant in the way that the government sought in that case. So I think that's an important point on the role of lenity with respect to the absurdity arguments that the government makes. If there are other questions, I'm happy to answer them. Otherwise, I ask the Court to affirm the decision below. All right. Thank you, Mr. Carpenter. Ms. Wray. Thank you, Your Honor. I won't say much unless Your Honors have additional questions. I will say that the Lopez interpretation of interpreting subparagraph C to mean at least two points does more violence to the language of the statute than the government's proposed interpretation. Can I say, what if I thought, let me just ask you a hypothetical, what if I thought they did equal damage to the text of the statute, then under the rule of lenity, shouldn't I adopt the Ninth Circuit's Lopez reading? If I have to do one or the other to make this statute make sense, I thought that was also one of Judge Willett's points in dissent that I found kind of compelling. Your Honor, again, I don't think so, because I think at the end of the day, and I want to make clear that it's not just the absurdity, it's both that and the surplusage issue and the fact that we do have a consistent reading of and in the statute. But am I right that on the Ninth Circuit's reading of subsection C, we get rid of both surplusage and absurdity if it means at least two points? There's nothing absurd about the statute and also A is still doing work. If it means at least two points, I think that it still would be, I'm trying to think about whether or not that's actually, whether that achieves the objective. And even so, you'd have somebody who has a three-point, I think all it does is really gets rid of absurdity, I mean of surplusage. I don't think it does any, it seems like a lot of the absurdity arguments floating around, and I'm sorry, I don't remember which ones are in your brief and which are in all of these other cases. But a lot of them do depend on this idea that someone can have a whole string of three-point violent offenses and not be covered. Or lots of drug offenses and no violent offenses. You know, it just, it makes no, in fact, it has to be medium-level violent offenses, but if you read it the way that the Ninth Circuit does, I suppose, then the folks who could not take advantage of it would be those who have any medium or high-level violent offense, as long as they also have, would have to be two or three. So, yeah, but I think that that interpretation requires this court to add language, and the government's interpretation does not require that. If your honors have no further questions, the government requests that this court reverse, vacate the defendant's sentence and remand for resentencing. Thank you. All right. Well, we thank both counsel for their arguments in this case. It's always possible Congress might clarify this. I don't think I'd hold my breath. Or it could be somebody's ticket to the Supreme Court. All right. So, as you know, we usually come down and shake your hands pre-COVID, but we're still COVID-restricted, so we wish you the best.
judges: G. Steven Agee, Albert Diaz, Pamela A. Harris